**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RENEE VARGAS,** | : | **Civil No.  1:19-CV-1858** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

Renee Vargas is a disability claimant who was a younger worker in her late 30s at the time of the alleged onset of her disability. Vargas' disabilities were physical and emotional in nature and included back, heart, and intestinal issues, along with depression and anxiety. Notwithstanding these impairments, the Administrative Law Judge (ALJ) who heard this case concluded that Vargas possessed the residual functional capacity (RFC) to perform sedentary work with "only occasional interaction with the public, coworkers and supervisors." (Tr, 20). Based upon this RFC assessment the ALJ determined that Vargas could work as an eye drop assembler, a visual inspector, or a hand packer.(Tr. 27).

1

Vargas now challenges this aspect of the ALJ's residual functional capacity assessment based upon a single narrowly focused argument.  According to Vargas, this RFC assessment fails as a matter of law because there was a latent shortcoming in this evaluation: the alleged failure of the vocational expert and ALJ to fully account for the amount of time that Vargas might initially need to spend with supervisors being trained for these simple tasks. Drawing upon a remark by the vocational expert which acknowledged that it was possible that Vargas's initial training might potentially involve more than occasional contact with a supervisor, the plaintiff argues that the failure to take this possibility into account undermined the ALJ's entire decisional rationale.

In considering this claim, we are mindful of two guiding legal tenets. First, as the Supreme Court has recently underscored, we employ a limited scope of review when considering Social Security appeals. Our task is simply to determine whether substantial evidence supports the ALJ's decision. On this score:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial

evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Second, consistent with this deferential standard of review, when we are called upon to assess whether an ALJ has sufficiently articulated a rationale for the mental and emotional components of an RFC, we have recently been instructed that this aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation'" for the mental and emotional limitations imposed upon a worker. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, it has been held that an ALJ offers a valid explanation for a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

Thus, Hess tells us that the legal sufficiency of an ALJ's mental RFC assessment should not be addressed in the abstract, through a mechanical process which requires adherence to certain terms of art. Instead, this analysis should be a

pragmatic consideration grounded in the evidence presented at the disability hearing. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019), and recognizing that a mental RFC is sufficient "as long as the ALJ offers a 'valid explanation,'" for the mental and emotional limitations imposed upon a worker, Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019), we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.      Statement of Facts and of the Case

On December 8, 2016, Renee Vargas applied for disability benefits pursuant to Title II of the Social Security Act, alleging that she had become totally disabled beginning in March of 2015 due to back, heart, and intestinal issues, as well as anxiety and depression. (Tr. 15, 17-18.) Vargas was born in August of 1975 and was 39 years old at the time of the alleged onset of her disability, making her a younger worker under the Commissioner's regulations. She had limited education but was able to communicate in English and had prior employment as a security guard. (Tr. 26).

This appeal challenges the sufficiency of the ALJ's analysis of Vargas' emotional impairments and specifically argues that this analysis was deficient and infirm because the ALJ did not sufficiently reconcile the RFC, which limited Vargas to "only occasional interaction with the public, coworkers and supervisors," (Tr, 20), with the training requirements for the jobs identified by the vocational expert who testified at Vargas's disability hearing.

As we have noted, this issue cannot be addressed in the abstract, but should be evaluated in the context of the ALJ's articulated factual findings concerning Vargas' mental capabilities, none of which have been challenged in this appeal. In this case, the ALJ found at Step 2 of the sequential analysis which applies to Social Security appeals that Vargas' severe impairments included a major depressive disorder and an adjustment disorder with anxiety and depression. (Tr. 18). While the ALJ concluded that these emotional impairments were severe at Step 2, the ALJ also found that these impairments, singly and combined, did not meet any Social Security listing requirements. (Tr. 19).

On this score, the ALJ found that Vargas had no limitations in understanding, remembering or applying information, citing her documented ability to handle money and the normal memory documented in clinical records. (Id.) As for Vargas's ability to interact with others, the ALJ determined that she experienced moderate

5

limitations, finding that she suffered some impairments but that her activities of daily living, which included regular shopping, and her medical records, which often described her as cooperative, revealed some capacity for working with others. (Tr. 19-20). The ALJ further found that Vargas had no limitations in concentration, persistence and pace, but encountered moderate limitations in adapting to new situations. (Tr. 20).

The ALJ then formulated an RFC for Vargas that limited her to sedentary work with the following additional restrictions to account for her anxiety and depression: Vargas was confined to work which entailed "only occasional interaction with the public, coworkers and supervisors." (Tr. 20). This component of the ALJ's RFC assessment for Vargas rested upon a consideration of her treatment records, reported activities of daily living, and the opinion of a state agency expert. That expert found that Vargas had no limitations in her ability to understand, remember, or apply information; experienced no limitations in her concentration, persistence or pace; and encountered only moderate limitations in her ability to interact with others and adapt to new situations. (Tr. 23).  Notably, none of these factual findings are directly challenged in this appeal.

Based upon this RFC determination, the ALJ concluded that Vargas could not return to her past work but could perform the duties of an eyedrop assembler, a visual

inspector, or a hand packer, and therefore did not meet the stringent standard for disability prescribed by the Act. (Tr. 26-7).

These findings were based upon the testimony of a vocational expert at a hearing was held on this disability application on July 16, 2018. (Tr. 32-60). The testimony of this vocational expert is pivotal to the resolution of this appeal, since Vargas argues on appeal that the ALJ's decision was flawed because it did not adequately address an internal inconsistency in the vocational expert's testimony regarding Vargas's ability to meet the mental demands of the workplace. At this hearing, in response to questions by the ALJ, the vocational exert testified that a person with the plaintiff's impairments who was limited to sedentary work that entailed only occasional contact with supervisors, coworkers and the public could perform three jobs in the national economy—hand packer, eye drop assembler and visual inspector. (Tr. 56).

In reaching this conclusion, the vocational expert identified three jobs that had a specific vocational preparation (SVP) level of 2. See Dictionary of Occupational Titles (DOT) 739.687-086, 1991 WL 680194 (SVP for eye-dropper assembler position is Level 2); DOT 739.687-182, 1991 WL 680217 (same, for table worker position); DOT 559.687-014, 1991 WL 683782 (same, for ampoule sealer (hand packer) position). In terms of its intellectual requirements, this is a forgiving

standard for work. The training requirements for SVP 2 positions are modest and consist of "[a]nything beyond short demonstration up to and including 1 month." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. Further, these positions entailed Level 1 or 2 reasoning skills, which simply required the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," 559.687-014 AMPOULE SEALER, DICOT 559.687-014, 739.687-086 EYE-DROPPER ASSEMBLER, DICOT 739.687-086, or "[a]pply commonsense understanding to carry out simple one-or two-step instructions." 739.687-182 TABLE WORKER, DICOT 739.687-182. Moreover, with respect to all three of these jobs identified by the vocational expert, the Dictionary of Occupational Titles indicated that taking instructions was not deemed a significant part of the job functions. Id.

While all of these factors suggested that these jobs could be performed by Vargas with only occasional contact with others, on cross examination the vocational expert acknowledged that initial training for these positions could potentially entail some additional communication with supervisors in the course of the following exchange:

> Q. For hypotheticals one and two there was a limitation included to occasional interactions with coworkers or supervisors, correct?
>
> A. Correct.

8

Q. But you would agree with me that at least during the training period that a person would be required to interact with either coworkers or supervisors for more than the occasional timeframe?

A. The potential does exist for that to occur.

Q. Right. So, like the first week or two of the work –

A. Training.

Q. – that you're working you're doing the training you're either going to be with a coworker or a supervisor during that time, correct?

A. For a period of time. It could exceed the 33%.

Q. Right. So –

A. Yes.

Q. – more than the two and a half hours in a day.

A. Right. Yes.

(Tr. 58-59).

This acknowledgement by the vocational expert that the potential existed for more than occasional contact with a worker during training in the first week or two of work forms the gravamen of this appeal. Focusing upon this exchange, Vargas argues that the possibility that initial training for these jobs might involve more than occasional contact in the first weeks on the job was not addressed by the ALJ in this

decision. Vargas then posits that the failure to speak to this possibility completely undermines the ALJ's decision in this case in a way which compels a remand.

This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court

requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate

limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of

the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),   404.1545(a)(1),   416.920(e),   416.945(a)(1).   In   making   this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant numbers in the national economy that the claimant could

16

perform that are consistent with the claimant's age, education, work, experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   <u>The ALJ's Decision in this Case is Supported by Substantial Evidence.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but

more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and

"does not mean a large or considerable amount of evidence," <u>Pierce v. Underwood</u>,

487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.' "

<u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019). We also acknowledge that an

ALJ's mental RFC assessment does not have to follow any particular format and

should be upheld "as long as the ALJ offers a 'valid explanation,'" for that

assessment. <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019).

Judged against these deferential standards of review, we find that substantial

evidence supported the ALJ's mental RFC assessment in this case. At the outset, we

are constrained to observe that courts have frequently sustained decisions like the

ALJ's determination in this case, which found that a claimant could perform SVP

level 2 jobs when the ALJ limited that claimant to occasional interactions with

coworkers or supervisors. <u>See, e.g.</u>, <u>Smathers v. Saul</u>, Case No. 18-1743, 2019 WL

5549340, at *9-10 (M.D. Pa. Sept. 30, 2019) (recommending affirmance of ALJ

decision where SVP level 2 jobs were identified and claimant was limited to

"'occasional interaction with coworkers and supervisors, but no interaction with

public'"), <u>adopted</u>, 2019 WL 5550017 (M.D. Pa. Oct. 25, 2019); <u>Davis v. Comm'r</u>

<u>of Soc. Sec.</u>, No. 18-17126, 2019 WL 4686818, at *3 (D.N.J. Sept. 26, 2019)

(affirming where ALJ found claimant not disabled for a period in which claimant was capable of "simple, routine, repetitive tasks that have a skill level of SVP 2" and "occasional interaction with supervisors and coworkers"); Romanoskey v. Berryhill, No. 16-2540, 2018 WL 1976472, at *8 (M.D. Pa. Mar. 27, 2018) ("The ALJ included in the hypothetical question the vocational limitations as unskilled, light work with [among other things] . . . an SVP of 2 or below; no interaction with the public; and no more than occasional interaction with supervisors or coworkers. . . . This was an entirely appropriate hypothetical question as it included all of Romanoskey's limitations as supported by the record"), adopted, 2018 WL 1967306 (M.D. Pa. Apr. 26, 2018); Gardner v. Comm'r of Soc. Sec., No. 16-4567, 2017 WL 4316877, at *5-7 (D.N.J. Sept. 28, 2017) (unskilled jobs compatible with limitation to "'occasional interaction with coworkers and supervisors, and no interaction with members of the public'").

Moreover, a number of these cases cast doubt upon the proposition that constitutes the keystone of Vargas' claim here—the idea that probationary training period requirements which may briefly exceed occasional contact wholly undermine an RFC which limits a worker to only occasional contacts with coworkers and supervisors. For example, in Torres v. Comm'r of Soc. Sec., No. 14-6178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015), the court rejected the claimant's argument that

the probationary period of most unskilled work requires more than occasional

contact, and that an inability to ensure that the worker would be strictly confined to

only occasional contact during training rendered an individual unable to sustain

employment. The court instead held that:

> Plaintiff cites no support for his position that a limitation to occasional
> interaction with supervisors (during a probationary period or otherwise)
> necessarily directs a finding of disability. . . . .Indeed, courts routinely
> find that an individual can perform unskilled work in the national
> economy, despite a limitation to only occasional interaction with
> coworkers, supervisors, and the public. See, e.g., Butler v. Colvin, No.
> 13-7488, 2015 WL 570167 (D.N.J. Feb. 11, 2015) (finding that
> substantial evidence supported the Commissioner's decision where
> Plaintiff was limited to only occasional interaction with co-workers and
> supervisors); Anderson v. Colvin, No. 14-94, 2015 WL 539909 (W.D.
> Pa. Feb. 10, 2015) (same); McCarl v. Colvin, No. 13-1803, 2015 WL
> 540067 (W.D. Pa. Feb. 10, 2015) (same); Torres v. Comm'r of Soc.
> Sec., No. 13-5439, 2015 WL 418171 (D.N.J. Jan. 30, 2015) (affirming
> where the ALJ's RFC assessment, which included only occasional
> interaction with supervisors, coworkers, and the public, was consistent
> with the claimant's functional limitations); Williams v. Colvin, No. 13-
> 5566, 2015 WL 221078 (E.D. Pa. Jan. 15, 2015) (same).

Torres, No. CV 14-6178 (JBS), 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015).

Likewise, in Thomas v. Colvin, the court rejected a similar claim that initial job

training requirements for an unskilled job undermined an ALJ's mental RFC

assessment, noting that: "The ALJ adequately accounted for Plaintiff's moderate

limitations with concentration, persistence, or pace by limiting her to simple, routine,

repetitive tasks; no fast pace or high production quotas; superficial interaction with

others (meaning of a short duration for a specific purpose)." <u>Thomas v. Colvin</u>, No. 1:16 CV 00675, 2016 WL 8346524, at *13 (N.D. Ohio Dec. 12, 2016), <u>report and recommendation adopted sub nom.</u> <u>Thomas v. Comm'r of Soc. Sec. Admin.</u>, No. 1:16-CV-675, 2017 WL 773586 (N.D. Ohio Feb. 27, 2017).

Further, this argument fails when it is viewed through the pragmatic analytical lens prescribed by the Court of Appeals in <u>Hess</u>. In our view, <u>Hess</u> controls here and enjoins us to address Vargas' ability to undertake the mental demands of the workplace in the specific factual context of this case. Further, applying this fact-bound approach, we are instructed that a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

Here, the ALJ provided a valid explanation for this RFC, which limited Vargas to "only occasional interaction with the public, coworkers and supervisors." (Tr. 20). The restrictions imposed by the ALJ were consistent with the ALJ's determination that Vargas had no limitations in her ability to understand, remember, or apply information; experienced no limitations in her concentration, persistence or pace; and encountered only moderate limitations in her ability to interact with others and adapt to new situations. (Tr. 23).  Significantly, none of these factual findings are challenged in this appeal, and substantial evidence in the form of clinical

evidence, an expert opinion, and Vargas' reported activities of daily living support these factual findings by the ALJ.

Furthermore, the vocational expert testified that the representative jobs identified in this case—eye drop assembler, hand packer and visual inspector—were consistent with this RFC. (Tr. 56). This testimony, in turn, was entirely consistent with the Dictionary of Occupational Title definitions for these jobs, which described the job titles as SVP 2 positions, whose training requirements are minimal and consist of "[a]nything beyond short demonstration up to and including 1 month." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. These positions also only entailed Level 1 or 2 reasoning skills and merely required the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions,"559.687-014 AMPOULE SEALER, DICOT 559.687-014, 739.687-086 EYE-DROPPER ASSEMBLER, DICOT 739.687-086 or "[a]pply commonsense understanding to carry out simple one-or two-step instructions."739.687-182 TABLE WORKER, DICOT 739.687-182. Moreover, according to the Dictionary of Occupational Titles taking instructions was not deemed a significant part of the job functions of any of these jobs. Id.

In light of these facts, all of which supported the ALJ's decision to limit Vargas to work which involved to "only occasional interaction with the public,

22

coworkers and supervisors," (Tr. 20), it cannot be said that the mere possibility that initial training for these jobs might involve more than occasional contact in the first weeks on the job wholly undermined the ALJ's decision in a material way which compels a remand of this case. Therefore, this argument fails.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law, was adequately articulated and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case. Therefore, this decision will be affirmed.

IV.   **Conclusion**

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 13th day of May 2020.

/S/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge